Opinion of the court by
Mr. Justice ISfiblack.
The complaint in this case was by James A. Lewis, Perry F.B Douglass and Calvin F. Sims against Henry Sims and Felix A.I *457 Rinehart, upon two chattel mortgages executed by Rinehart to the plaintiffs upon his interest in certain partnership property owned and held by the said Rinehart and Henry Sims as partners in the business of farming, to secure the plaintiffs as the indorsers and sureties upon a bill of exchange held by Samuel M. Mitchell on which Rinehart was principal, alleging that the plaintiffs had been compelled to pay the bill of exchange; that Rinehart had no other property than that so mortgaged by him, and praying a settlement of the partnership business and a foreclosure of the mortgages on Rinehart’s separate interest in the partnership property.
Rinehart made default.
The defendant Sims answered in general denial, and by way of cross-complaint claimed a lien upon Rinehart’s interest in the partnership property to secure him in money loaned to Rinehart on partnership account, and the individual account of the said Rine-hart ; also to secure him as surety on a bill in bank, the private debt of Rinehart. Which lien the said defendant Sims averred was reserved to him by the articles of partnership between him and Rinehart.
The defendant Sims, after filing his answer and cross-complaint, died, and William R. Harrison, having been appointed administrator of his estate, was substituted as defendant in his stead.
Issue being joined the cause was submitted'to the court for trial, and at the request of the plaintiffs the court made a special finding of the facts which may be summarized as follows:
That on the first day of February, 1864, Henry Sims and Felix A. Rinehart entered into partnership in the business of farming for the period of one year, for the purpose of having farmed for* their joint benefit a certain farm belonging to the said Henry Sims, known as the Jackson farm, and situate near Martinsville, Indiana, the said Sims to furnish the farm and the said Rinehart the labor, and the proceeds to be divided equally, in accordance with written articles of partnership mutually signed by the parties; that on the same day Rinehart executed to the said Hénry Sims a mortgage on his interest in certain personal property then on the Jackson farm and belonging to him and the said Sims as partners, as above stated, to secure the payment of a note of even date and payable one year after date, for $265.26, which mortgage was duly recorded on the *458 next day after its execution; that said mortgage has since been fully satisfied and discharged; that during the progress of the partnership entered into as above, to-wit, some time in the year 1866, Rinehart became indebted to the First National Bank of Martins-ville upon his private account, and made a note to such bank for such indebtedness with the defendant, Sims, as his surety; that all the stock, implements and other personal property used in carrying on their partnership business were owned and held by the defendants, Sims and Rinehart, equally; that they also owned and held all the stock raised on, and the products of, the farm equally; that their partnership business was continued and carried on under their articles of partnership herein above referred to until the 16th day of August, 1871, when a new agreement in writing concerning such partnership, covering the period of one year, was mutually executed by them, by which the partnership was extended to and made to embrace another farm, known as the Holebrook farm; that by this new agreement the defendant, Sims, was described as the party of the first part, and the said Rinehart as the party of the second part, it being stipulated therein that Rinehart was to do all the work and to make all the necessary repairs on both farms, such repairs to be made under the direction and with the consent of the said Sims, and tc extend to the farming implements and everything else used by the firm,' and that Rinehart was not to cut any timber nor to sell or otherwise dispose of any stock, grain or other property on either of said farms without the sanction of the said Sims ; that this new agreement concluded as follows:
“ The party of the first part to hold and have a lien on all property now belonging to said firm, until the operation of the year is settled up between the said Sims and Rinehart, consisting of stock, corn, implements, and everything else on said farms, to-secure the said Sims for money advanced and endorsing bank notes, etc., or any other liability;” that afterwards it was mutually agreed that this new contract of partnership should run for an indefinite period of time; that the increased assets of the firm under the new contract of partnership were owned and held as before by both partners equally; that the bank debt of Rinehart, referred to as above, had been renewed from time to time by Rinehart with Sims as his surety, and remained then unpaid; that said firm car *459 ried on its farming operations under said last named articles of partnership until the death of Sims, which took place on the 11th day of October, 1877; that said new articles of partnership were neither acknowledged nor recorded as is provided by law for the acknowledgment and recording of mortgages or other conveyances, nor in any other manner, whatsoever; that since the death of Sims, to wit: in May, 1878, the said Harrison, as his administrator, was compelled to pay, and did pay, the bank debt of Rinehart, for which said Sims was surety, as above set forth, the bank having taken judgment against Sims as such surety; that in the execution of said new articles of partnership, it was the intention of both Rinehart and Sims that such articles should create a lien in favor of Sims on all the partnership property, to secure him in his sure-tyship for Rinehart on said bank debt, and that it was understood that such a lien had been created up to, and until, the commencement of this action; that Rinehart has never repaid to the estate of Sims the amount of money, or any part thereof, paid by Harrison, as the administrator of such estate, in discharge of the bank debt of the said Rinehart, and that there was then due to said estate for money so paid by the said Harrison the sum of $1,367.50; that in carrying on the partnership business, Rinehart was compelled to employ, persons to assist him in doing the work on the farms, which he had obligated himself to perform; that he p^jd these persons in part by orders on merchants for goods, which were given and accepted upon his individual credit; that he also borrowed money with which he hired laborers to assist him on the farms; that in this'way he became indebted to Samuel M. Mitchell in the sum of seven hundred and thirty dollars, about three hundred dollars of which was for goods so furnished on orders, and the rest for money borrowed; that on the 21st day of January, 1876, Rinehart gave his individual note to the said Mitchell for the sum in which he had become indebted, with the plaintiffs as his sureties ; that afterwards, to-wit, on the 20th day of April, 1877, the said Rinehart gave the plaintiffs the first mortgage sued on, and on the 17th day of May, 1877, he executed the second mortgage in suit, to secure the plaintiffs on account of their liability as sureties on said note to Mitchell; that the plaintiffs, at the time they took said mortgages, had no notice *460 or knowledge of the existence of the new or last named articles of partnership entered into between. Sims and Rinehart, as herein above described; that when Rinehart executed these mortgages, he represented to the plaintiffs that there were no prior liens on the property included within them; that both of these mortgages to the plaintiffs were recorded within ten days after they were respectively executed; that as such sureties for the said Rinehart the plaintiffs have been compelled to pay and have paid said note to the said Mitchell; that Rinehart has in no manner repaid to the plaintiffs the amount paid by them for him to the said Mitchell, or any part thereof, and that there was then due to the plaintiffs from Rinehart, on account of their payment of said note to Mitchell, the sum of eight hundred and fifty-one dollars and nineteen cents; that at the time of the execution of the mortgages to the plaintiffs, and at the time of the trial, the condition of the partnership business was as follows: Its total assets were of the value of two thousand and eight hundred and fifty-three dollars, and the value of the parti«ular property named in the mortgages was two thousand six hundred dollars; that the firm of Sims and Rinehart owed no debts save such as it owed to its own members, Sims and Rinehart respectively ; that during the transaction of their partnership business the said Sims and Rinehart had from time to time reckonings of their mutual accounts so as to adjust their several advancements to and charges against the firm and against each other; that, on the 6th day of January, 1876, they had such a reckoning, and Sims was found to be indebted to Rinehart upon partnership transactions, which had not been previously adjusted, in the sum of $287.98, for which sum Sims executed his due bill of that date to Rinehart, which amount it was agreed should be credited on notes held by Sims on Rinehart; that Sims acted as treasurer and cashier of the firm and received all the money for property sold, and when Rine-hart wanted money he drew it from Sims; that Sims would sometimes charge his advances to Rinehart on the partnership books, and at other times these charges on the books would be settled by notes from Rinehart to Sims; that in this way Sims hélfi notes on Rinehart at the time this action was commenced as follows : One for $350, dated June 14, 1873,and due one day after date; another for $100, dated August 2, 1873, and also due one day after date; *461 another for $78, dated August 22, 1873, and also due one day after date; another for $40, dated November 18, 1873, and also due one day after date; another for $22.13, dated December 13, 1873, and also due one day after date; another for $160, dated December 24, 1873, and also due one day after date; that these were the notes referred to in the due bill executed by Sims to Rinehart on the 6th day of January, 1876; that the monéy received by Rine-hart on these notes, with the exception of $140, was expended by him in carrying on the business of the firm; that after crediting the amount of the due bill on these notes there yet remained due to Sims on such notes the sum of $343; that in adjusting the partnership accounts the said sum of $343 should be treated as having been advanced by Sims out of his private means; that' Rinehart was insolvent, and aside from his interest in the firm had no property subject to execution; that by mutual agreement the stock, grain and the other property of the firm of Sims and Rinehart have been sold and converted into money, subject to the rights of the several parties hereto in such stock, grain and other partnership property, which money, by further agreement, has been placed in the hands of the defendant Harrison, as administrator of the estate of Henry Sims, subject to the order of court in this cause; that the sum of $2,853 was realized from the sale of the entire partnership property, and that the specific articles enumerated in the plaintiff’s mortgages sold for the aggregate sum of $2,600.
As conclusions of law from the foregoing facts the court found:
1st. That of the said sum of $2,853 one-half, to-wit, the sum of $1,426.50 should be paid to the estate of Henry Sims.
2d. That the sum of $343, the balance due to Sims on notes held against Rinehart, ought to be paid to the estate of the said Henry Sims out of the remaining half of said sum of $2,853.
3d. That the remainder of said last named sum, to-wit, the sum of $1,083.50 ought to be retained by the defendant Harrison, as administrator of the said Henry Sims’ estate, and credited upon the amount paid by him, as such administrator, on the bank indebtedness of Rinehart for which the said Sims was surety.
To these conclusions of law the plaintiffs excepted, but the court, disregarding their exceptions, rendered judgment in accordance with the conclusions at which it had thus arrived.
*462 The principal, and indeed controlling, question in this case is, did the plaintiffs below, who are the appellants here, by their mortgages in suit acquire a priority of lien upon the mortgaged property over that claimed by Henry Sims under the concluding clause of the new articles of partnership set out as above in the special finding ?
Collyer on Partnership, Vol. 1, 186, in treating on the separate interests of the several partners in a firm, and quoting from Lord Hardwick, says that “ when an account is to be taken each is entitled to be allowed against the other everything he has advanced, or brought in as a partnership transaction, and to charge the other in the account with what the other has not brought in, or has taken out more than he ought, and nothing is to be considered his share but the proportion of the residue on the balance of the account.”
This proportion of the residue to which each party is entitled upon final settlement is obviously what remains to him after all his obligations to the firm, and to the other members thereof respectively arising out of the contract, or articles of partnership, have been fully discharged.
Each partner has a special lien on the partnership stock for moneys advanced by him more than his share for the use o‘f the co-partnership, and the lien of each partner exists not only as against the other partners, but also against all persons claiming through them or any of them. Lindley on Partnership, vol. 1, p. 681.
The note to the First National Bank of Martinsville, upon which Henry Sims was surety for Rinehart, being the private and individual debt of Rinehart, the estate of Sims would have had no lien against the interest of Rinehart in the firm in the absence of some express agreement conferring such a lien, but we know of nothing against the competency of Rinehart to stipulate as a part of the contract of partnership for the creation of such a lien in favor of his co-partner, to guard against any loss or defalcation which might incidentally or otherwise injure the business of the firm, or might injuriously affect Sims, as a member of the firm.
Sims and Rinehart, having been in the joint possession of the partnership property, in the prosecution of their business as partners, their individual creditors were required to take notice of their *463 respective rights and interests in such partnership property, and of the prior claim which any other person, interested in the business of the partnership, might have had against such property.
Mitchell & Shirley, for appellant.
Harrison & McCord, for appellee.
No record of the articles of partnership was necessary to charge individual creditors with notice of such rights and interests, and such prior claims.
The circumstances under which the appellants took their mortgages, necessarily put them upon their inquiry as to the tenure by which Rinehart held an interest in the mortgaged property, and charged them with notice of any prior claim which Sims, as the partner of Rinehart, may have had upon it.
We are, therefore, of the opinion that the lien of the estate of Sims upon the partnership property, had precedence of the liens conferred by the mortgages, and that the court below did not err in the conclusions of law at which it arrived. Donellan v. Hardy, 57 Ind. 396; Over v. Hetherington, 66 Ind. 365.
The judgment is affirmed with costs.